UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                      Case No.: 13-71700-ast
                                      Chapter 7

Richard Kern,

                         Debtor.
-----------------------------------------------------------------x
Sheet Metal Workers' National Pension Fund;     Adv. Pro. No.: 13-08096-ast
National Energy Management Institute
Committee for the Sheet Metal and Air
Conditioning Industry, Sheet Metal Occupational
Health Institute Trust, International Training
Institute for the Sheet Metal and Air Conditioning Industry,
And National Stabilization Agreement of the
Sheet Metal Industry Fund,

                       Plaintiffs,

        - against -

Richard Kern,

                      Defendant.
-----------------------------------------------------------------x

**DECISION AND ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

      Pending before the Court are the following: (I) the motion for summary judgment filed by

Sheet Metal Workers' Pension Fund ("Pension Fund"), National Energy Management Institute

Committee for the Sheet Metal and Air Conditioning Industry ("NEMIC"), Sheet Metal

Occupational Health Institute Trust ("SMOHIT"), International Training Institute for the Sheet

Metal and Air Conditioning Industry ("ITI"), and National Stabilization Agreement of the Sheet

Metal Industry Fund ("SASMI," and collectively, "Plaintiffs" or the "Benefit Funds") (the

"Summary Judgment Motion") [dkt item 26]; (II) the cross-motion for summary judgment filed

by Richard Kern ("Kern," "Debtor" or "Defendant") ("Defendant's Cross-Motion for Summary Judgment") [dkt item 28]; and (III) Plaintiffs' Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (the "Plaintiffs' Opposition," together with Plaintiffs' Summary Judgment Motion, Defendant's Cross-Motion for Summary Judgment, the "Motions").  [dkt items 35, 36 and 38].

Each of the Plaintiffs are benefit funds established under the statutory framework of ERISA.  Debtor was the principal owner and control person of a closely held company which employed persons who were entitled to have contributions made on their behalf to the Benefit Funds.  The issue before the Court is whether $1,369,803.98 of unpaid contributions due to these Benefit Funds are non-dischargeable debts pursuant to § 523(a)(4) of the Bankruptcy Code. There is no issue in this case about misuse or misappropriation by Debtor of funds collected from employees that were not remitted to one or more of the Benefit Funds; rather, the sole issue is whether Debtor's failure to cause the employer he controlled to make various contributions to the Benefit Funds constitutes defalcation while acting in a fiduciary capacity.  Because the Court concludes that Debtor's liability for the unpaid contributions is dischargeable, Plaintiffs' Summary Judgment Motion is denied and Defendant's Cross-Motion for Summary Judgment is granted.

## **JURISDICTION AND AUTHORITY TO ENTER A FINAL ORDER**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), and (O), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.  Furthermore, this Court has the authority to

enter a final order in this nondischargeability action. *See In re Salim*, Case No. 13-42974 (ESS),

Adv. Pro. No. 13-01442 (ESS), 2015 Bankr. LEXIS 815 at *3-5 (Bankr. E.D.N.Y. Mar. 16,

2015).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court is not stating findings of facts and conclusions of law because Rule 7052 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), incorporating Rule 52(a)(3) of

the Federal Rules of Civil Procedure, does not so require in ruling on a motion for summary

judgment. FED. R. BANKR. P. 7052.

## BACKGROUND AND PROCEDURAL HISTORY[1]

### *General Background*

On April 3, 2014, Debtor commenced a voluntary petition for relief under chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code").[2]  [dkt item 1]

On September 17, 2013, Debtor's case was converted from a case under Chapter 11 to a

case under Chapter 7.  [dkt item 76]

On January 29, 2014, Debtor received his discharge under Chapter 7.  [dkt item 96]

On January 31, 2014, the Clerk of the Court notified all creditors of Debtor's discharge.

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties and the public dockets in this case.  Local Bankruptcy Rule 7056-1 requires that a party seeking summary judgment file a statement of facts the party alleges to be without a genuine dispute, and that each fact be supported by a citation to admissible evidence in the summary judgment record as required by Rule 56(c) of the Federal Rules of Civil Procedure ("Rules"). *See* FED R. CIV. P. 7056(e); E.D.N.Y. Local Bankr. Rule 7056-1. Similarly, facts alleged by a party opposing summary judgment must be set out in a LBR 7056-1 statement supported by admissible testimonial or documentary evidence, and with citation to conflicting testimonial or documentary evidence as required by Rule 56(c); a party may not simply deny alleged materials facts by a conclusory statement, or without citation to admissible evidence.  This Court has not considered any fact alleged by Plaintiffs and Defendant which is not properly sourced or supported.  This Court has also accepted as true properly supported facts alleged by Plaintiffs and Defendant which have not been properly refuted or challenged by Plaintiffs or Defendant. *See* FED R. CIV. P. 7056(e); E.D.N.Y. Local Bankr. Rule 7056-1; *Meredith Corp. v. Sesac, LLC*, 1 F. Supp. 3d 180, 186 n.3 (S.D.N.Y. 2014).

[2] Unless otherwise indicated, all references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[dkt item 97]

### *The Adversary Proceeding*

On June 19, 2013, Plaintiffs timely commenced this adversary proceeding seeking a denial of Debtor's discharge pursuant to 11 U.S.C. §§ 727(a) and (c)(1) and a determination of nondischargeability under § 523(a)(4) (the "Complaint").  [dkt item 1]

On July 30, 2013, Defendant filed an answer to the Complaint asserting general denials. [dkt item 6]

On August 6, 2013, the Court entered an *Initial Adversary Scheduling Order*. [dkt item 7]

On December 5, 2013, the Court entered a *Discovery Scheduling Order*.  [dkt item 13]

On December 6, 2013, the Court approved a stipulation permitting Plaintiffs to amend their Complaint.  [dkt item 15]

On December 9, 2013, Plaintiffs filed an amended complaint (the "Amended Complaint") by which they withdrew their cause of action pursuant to 11 U.S.C. § 727(a) and (c)(1), and now seek only a determination of nondischargeability of the ERISA contributions pursuant to 11 U.S.C. § 523(a)(4).  [dkt item 16]  Plaintiffs.

On April 1, 2014, the Court entered an *Adversary Pre-Trial Scheduling Order*.  [dkt item 21]

On April 17, 2014, Defendant filed an answer to the Amended Complaint asserting general denials.  [dkt item 22]

On May 5, 2014, the Court entered an *Amended Adversary Pre-Trial Scheduling Order*, with a trial date scheduled for October 2, 2014.  [dkt item 23]

On July 24, 2014, Plaintiffs filed their Summary Judgment Motion.  [dkt item 26]

On August 18, 2014, Defendant filed his Cross-Motion for Summary Judgment.  [dkt

4

item 28]

On September 8, 2014 and September 9, 2014, Plaintiffs filed their Opposition to

Defendant's Cross-Motion for Summary Judgment. [dkt items 35, 36 and 38]

On September 10, 2014, the Court heard oral arguments on the Motions and took the

Motions on submission.[3]

**UNDISPUTED FACTS AND MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

*The contractual relationships and consent judgments*

Plaintiffs are and were national and local employee benefit plans within the meaning of

Section 3(3) of ERISA, 29 U.S.C. § 1002(3).[4]  Defendant, Kern, was the principal owner of the

now defunct closely held corporation, Cool Sheetmetal, Inc. ("CSI").[5]

CSI was an employer within the meaning of Section 3(5) of ERISA, 29

U.S.C. § 1002(5).[6]  CSI entered into certain Collective Bargaining Agreements which, *inter alia*,

provided for various contributions to be made by CSI to the Benefits Funds; these contributions

were based on hours worked by fund participants who were employed by CSI.[7]

---

[3] On August 6, 2015, Plaintiffs filed a letter ("Letter") requesting that the Court take judicial notice of an adversary proceeding filed by the CSI bankruptcy trustee against Defendant. [dkt item 42]  On August 17, 2015, Defendant filed a response ("Response") requesting that the Court not take judicial notice of the Letter. [dkt item 43]  The Court will not take judicial notice of either the Letter or the Response.

[4] *See* Plaintiffs' Rule 7056 Statement, ¶ 1 ("Plaintiffs' Statement") [dkt item 26-1]; Declaration of Jeffrey S. Dubin [dkt item 26-3] ("Dubin Decl.") ¶¶ 16-20; Article X of the Agreements and Declarations of Trust of ITI, NEMIC and SMOHIT; Collective Bargaining Agreements between the parties, August 1, 2005 to July 31, 2009, August 1, 2009 to July 31, 2011 and September 15, 2011 to July 31, 2014, Article XII, Section ("Sec.") 20, Exhibits E, F and G of the Dubin Decl.; Defendant's Counter Rule 7056 Statement, ¶ 1 ("Defendant's Counter-Statement") [dkt item 28-19].

[5] *See* Plaintiffs' Statement, ¶ 3; Deposition ("Depo.") transcript of Kern dated May 13, 2014, pages 27-29 attached as Exhibit Z to the Dubin Decl.; Defendant's Counter-Statement, ¶ 3

[6] *See* Plaintiffs' Statement, ¶ 4; Dubin Decl. ¶ 10, citing Exhibits E, F and G of the Dubin Decl.; Defendant's Counter-Statement, ¶ 4.

[7] *See* Plaintiffs' Statement, ¶ 5; Article XII B, Sec. 21, 22 and 23 of the CBA dated August 1, 2005 to July 31, 2009 ("2005-2009"); Article XII B, Sec. 21-23 of the CBA dated August 1, 2009 to July 31, 2011 ("2009-2011"); Article

The Benefits Funds are expressly third party beneficiaries of the CBA's.[8]

Most relevant here the CBA's provide:

> contributions are considered assets of the respective Funds and **title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer.**

(emphasis added).[9]

Defendant, in his capacity as principal of CSI, employed persons who were participants in the Benefits Funds within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), while the CBA's were in full force and effect.[10]

As the principal owner of CSI, Kern exercised authority, control and management over the disposition of assets of CSI, had decision making authority with respect to whether or not to pay the obligations of CSI and which accounts payable were to be paid by CSI, and determined whether or not and when CSI made contributions to the Benefits Funds.[11]

---

XII B Sec. 21 – 23 of the CBA dated September 15, 2011 to July 31, 2014 ("2011- 2014"), Exhibits E, F and G of the Dubin Decl. (collectively, the "CBA's").

[8] *See* Plaintiffs' Statement, ¶ 6; Article XII B, of the CBA 2005-2009; Article XII B of the CBA, 2009-2011; Article XII B of the CBA, 2011-2014, Exhibits E, F, and G of the Dubin Decl.. The CBA's incorporate by reference the provisions of the Agreements and Declarations of Trust of the Benefits Funds. *See* Plaintiffs' Statement, ¶ 7; Article XII B., Sec. 21.C., and Sec. 24.A., of the CBA 2005-2009; Article XII B., Sec. 21.C. and Sec. 24.A. of the CBA 2009-2011; Article XII B., Sec. 21.C and Sec. 24.A of the CBA 2011-2014, Exhibits E, F and G of the Dubin Decl.

[9] *See* Plaintiffs' Statement, ¶ 9; Article XII A., Sec. 19.B., and Article XII B., Sec. 24.B., of the CBA 2005-2009; Article XII A., Sec. 19.B., and Article XII B., Sec. 24.B., of the CBA 2009-2011; Article XII A., Sec. 19.B., Sec. 24.B. of the CBA 2011-2014, Exhibits E, F, and G of the Dubin Decl. Although Defendant originally disputed these factual allegations because the CBA's were not signed or called for a legal conclusion, Defendant abandoned these arguments during oral argument on the Motions. *See* Defendant's Counter-Statement, ¶¶ 5-9.

[10] *See* Plaintiffs' Statement, ¶ 10; Depo. transcript of Kern pp. 12, 13, 15 and 24 attached as Exhibit Z of the Dubin Decl.; Defendant's Counter-Statement, ¶ 10.

[11] *See* Plaintiffs' Statement, ¶ 11; Depo. transcript of Kern pages 30-32 attached as Exhibit Z of the Dubin Decl.; *See* Defendant's Counter-Statement, ¶ 11. As such, Kern determined whether or not CSI made timely contributions to the Benefits Funds. *See* Plaintiffs' Statement, ¶ 12; Depo. transcript of Kern pp. 31-32 attached as Exhibit Z of the Dubin Decl.; Defendant's Counter-Statement, ¶ 12. Plaintiffs' Statement, ¶¶ 13-15; Depo. transcript of Kern pp. 30-32 attached as Exhibit Z of the Dubin Decl.; Defendant's Counter-Statement, ¶ 13.

Between 1994 and 2012, CSI periodically fell behind on contributions due to Plaintiffs, although CSI continued to pay portions of the contributions through early 2012.[12] CSI and Kern entered into two consent judgments concerning unpaid contributions: one dated July 30, 2010 in the amount of $725,265.25 (the "2010 Judgment"), and one dated December 4, 2012 in the amount of $968,843.90 (the "2012 Judgment," and together with the 2010 Judgment, the "Consent Judgments").

On December 1, 2011, CSI was terminated by Plaintiffs as a pension fund contributory employer (the "Termination"). *See* Defendant's Statement, ¶ 3; Kern Aff., ¶12 and Exhibit 2 annexed thereto; Plaintiffs' Reply Statement, ¶ 3. As a result, CSI could no longer make pension contributions for any of the union members it employed. This Termination lead to a loss of union employees and contributed to CSI's inability to continue its business operations. *See* Defendant's Statement, ¶ 4; Kern Aff., ¶ 13. As of the Termination, Debtor and CSI owed $1,369,803.98 of unpaid contributions to the Benefit Funds.

### The financial relationships among Plaintiffs, CSI and Kern

Prior to the Termination, CSI paid at least $455,165.00 of the contributions owed under the 2010 Judgment. *See* Defendant's Statement, ¶ 5; Kern Aff., ¶16. Also, prior to the Termination, Kern had personally paid at least $150,000.00 of the contributions owed to the Benefit Funds under the 2012 Judgment. *See* Defendant's Statement, ¶ 6; Kern Aff., ¶ 17 and Exhibit 12.

In order to keep CSI operating, Kern and Sharon Kern (Kern's wife) personally contributed $577,392.00 of their own funds into CSI's operations from September 11, 2010

---

[12] *See* Defendant's Statement of Material Facts Not in Dispute in Support of Cross Motion for Summary Judgment ("Defendant's Statement") [dkt item 28-21], ¶¶ 1, 2; Affidavit of Kern ("Kern Aff.") ¶ 12 and Exhibits 1 and 2 thereto; Plaintiffs' 7056 Reply Statement, ¶ 1 ("Plaintiffs' Reply Statement") [dkt item 38].

through February 7, 2012 by direct cash deposits; the vast bulk of these were contributed prior to the Termination.  *See* Defendant's Statement, ¶ 8; Kern Aff., ¶ 24, Affidavit of Sharon Kern ("Sharon Kern Aff."), ¶ 5 and Exhibits 13 and 14 attached thereto; Plaintiffs' Reply Statement, ¶ 8.

Kern and Sharon Kern paid direct obligations of CSI's totaling $45,446.49 during the end of 2011 and beginning of 2012; the bulk of these were paid prior to the Termination.  *See* Defendant's Statement, ¶ 9; Kern Aff., ¶ 25, Sharon Kern Aff., ¶ 5 and Exhibit 14 attached thereto; Plaintiffs' Reply Statement, ¶ 9.

From January 1, 2009 until March 31, 2010, Kern received approximately $257,405.00 of salary from CSI.  *See* Defendant's Statement, ¶ 11; Kern Aff., ¶¶ 22-23 and Exhibits 9, 10 and 11 attached thereto; Plaintiffs' Reply Statement, ¶ 11.

From January 1, 2009 until March 31, 2010, Sharon Kern received approximately $78,360.00 of salary from CSI.  *See* Defendant's Statement, ¶ 12; Kern Aff., ¶ 24 and Exhibits 9, 10 and 11 attached thereto; Sharon Kern Aff.; Plaintiffs' Reply Statement, ¶ 12.

From March 1, 2010 until August 31, 2011, Kern received approximately $192,689.00 of salary from CSI. *See* Defendant's Statement, ¶ 13; Kern Aff., ¶ 23; Plaintiffs Reply Statement, ¶ 13.

From August 1, 2010 until August 31, 2011, Sharon Kern received approximately $64,200.00 of salary from CSI.  *See* Defendant's Statement, ¶ 14; Kern Aff., ¶ 23; Plaintiffs Reply Statement, ¶ 14.

### *Positions of the parties*

Plaintiffs concede that there is no issue in this case about the misuse or misappropriation by Debtor of funds collected from employees, and that the sole issue is the failure of CSI to

make various contributions to the Benefit Funds.  Plaintiffs contend: (i) the CBA's and the

statutory framework of ERISA render all funds collected by CSI as trust funds held for the

benefit of the Benefit Funds; (ii) Debtor's failure to pay any contributions to the Benefit Funds

from any funds collected by CSI was a defalcation by Debtor while acting as an ERISA fiduciary

within the meaning of Bankruptcy Code § 523(a)(4); and (iii) therefore, the unpaid contributions

owed to Plaintiffs are nondischargeable.  Defendant argues that he was not a fiduciary under

either ERISA or as defined by the Bankruptcy Code and, in the alternative, that no defalcation

occurred; as a result, the unpaid contributions owed to Plaintiffs are dischargeable.

## LEGAL ANALYSIS

### I.    *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule

7056(c), provides that summary judgment should be granted to the moving party if the Court

determines that "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted).  A

movant has the initial burden of establishing the absence of any genuine issue of material fact.

*Celotex*, 477 U.S. at 322-23.  A fact is "material" if it "might affect the outcome of the suit under

the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact

is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id.*  If the movant meets its initial burden, the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (internal citations omitted).  The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995); *Burrell v. City Univ. of New York,* 894 F. Supp. 750, 757 (S.D.N.Y. 1995).  "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001); *see Burrell*, 894 F. Supp. at 758 (citing *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)); *see also In re Oak Rock Fin., LLC*, 527 B.R. 105, 113 (Bankr. E.D.N.Y. 2015).

## II.    *Section 523(a)(4) Liability*

### A.  *General Overview*

Exceptions to discharge under § 523(a) must be strictly construed in favor of the debtor in order to comply with the "fresh start" policy underlying the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *In re Duncan*, 331 B.R. 70, 76 (Bankr. E.D.N.Y. 2005).  As the Supreme Court has stated, "exceptions to discharge "should be confined to those plainly expressed.'" *Bullock v. BankChampaign, N.A.,* 133 S. Ct. 1754, 1760 (2013) (quoting *Kawaauhau v. Geiger*, 523 U.S. 62, 118 S. Ct. 974 (1998)).  The creditor bears the burden of proving each element of its cause of action by a preponderance of the evidence. *Grogan*, 498 U.S. at 287; *Duncan*, 331 B.R. at 76-77; *In re Watterson*, 524 B.R. 445 (Bankr. E.D.N.Y. 2015).

10

A creditor must satisfy three elements to meet the exception to dischargeability under Section 523(a)(4): (1) the existence of an express or technical trust involving the entrusting of money or other property for the benefit of another; (2) debtor must have acted in a fiduciary capacity with respect to the trust; and (3) the debt must arise from a defalcation committed by debtor. *Duncan*, 331 B.R. at 77; *Watterson*, 524 B.R. at 451. As is further discussed below, the Supreme Court recently stated that defalcation "includes a culpable state of mind …. one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock* 133 S. Ct. at 1757.

### B. Express or Technical Trust

"Section 523(a)(4) of the Bankruptcy Code applies only to express or technical trusts, not to constructive trusts, implied trusts, or trusts implied on the basis of wrongful conduct." *Duncan*, 331 B.R. at 77 (citations omitted); *Watterson*, 524 B.R. at 451. To establish the existence of an express statutory trust, which Plaintiffs seem to assert exists here, Plaintiffs must show that property or money was entrusted to a "trustee," that a statute creates or identifies a "fiduciary" duty, and that the trust was in place when the defalcation giving rise to the debt occurred. *Duncan*, 331 B.R. at 77 (citing *In re Gunter*, 304 B.R. 458. 460-61 (Bankr. D. Colo. 2003) and *Citik Ka Wah Bank Ltd. v. Wong (In re Wong)*, 291 B.R. 266, 278 (Bankr. S.D.N.Y. 2003)); *Watterson*, 524 B.R. at 451.

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court noted that "ERISA abounds with the language and terminology of trust law." 489 U.S. 101, 110 (1989); *see also Duncan*, 331 B.R. at 77 (citing *Friedlander v. Doherty*, 851 F. Supp. 515, 520 (N.D.N.Y. 1994)) ("Both the language and the legislative history of ERISA suggest that Congress intended traditional concepts of trust law to be applied to cases brought under ERISA.") As the *Duncan* court noted,

terms such as "participant," "beneficiary," "fiduciary," and "trustee," which arise from trust law, appear throughout ERISA. *Duncan*, 331 B.R. at 77-78 (citing 29 U.S.C. §§ 1002(7) (participant); 1002(8) (beneficiary); 1002(21)(A) (fiduciary); 1103(a) (trustee)).

ERISA Section 403(a) requires that "all assets of an employee benefit plan shall be held in trust by one or more trustees." 29 U.S.C. § 1103(a). "In addition, ERISA provides that the assets of an employee benefit plan 'shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.'" *Duncan*, 331 B.R. 77-78 (quoting 29 U.S.C. § 1103(c)).

Defendant does not challenge the existence of an ERISA trust. Plaintiffs are and were employee benefit plans within the meaning of ERISA; CSI was an employer as defined under ERISA that entered into contracts with Plaintiffs which provided for contributions to be paid by CSI to the Benefit Funds for certain hours worked by participants employed by CSI. The Benefit Funds are third party beneficiaries of these contracts. The CBA's define unpaid contributions to the Benefit Funds as trust funds. *See Duncan*, 331 B.R. at 78 (collecting cases holding that ERISA-covered employee benefit plans constitute trusts for purposes of § 523(a)(4)). Thus, an express statutory trust exists for purposes of § 523(a)(4).

## C. *Fiduciary*

The fiduciary relationship necessary for a denial of discharge under § 523(a)(4) is determined by federal law. *See In re D'Abrosca*, Case No. 09-11638, Adv. Pro. No. 09-01070, BAP No. 10-062, 2011 Bankr. LEXIS 3007, at *5 (B.A.P. 1st Cir. Aug. 10, 2011); *Duncan*, 331 B.R. at 80; *see also In re Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998). ERISA provides two mechanisms to establish fiduciary status: (1) an individual or entity may be a fiduciary if named as such under an ERISA plan; *see* 29 U.S.C. § 1102(a)(2); or (2) ERISA provides for a

functional test by which a person or entity may be held to be an ERISA fiduciary, as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he [or she] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he [or she] has any discretionary authority or discretionary responsibility in the administration of the plan.

29 U.S.C. § 1002(21)(A); *see also Mertens v. Hewitt Assocs.* 508 U.S. 248, 262 (1993) (Supreme Court described ERISA's definition of a fiduciary "not in terms of formal trusteeship, but in functional terms of control and authority over the plan."); *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).  In *Lopresti*, the Second Circuit determined that a company's president and majority shareholder was an ERISA fiduciary because he had a role in determining which bills to pay, which creditors were to be paid out of the company's general account, and when they would be paid.  *See also Blatt v. Marshall and Lassman*, 812 F.2d 810, 812-13 (2d Cir. 1987); *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984); *Duncan,* 331 B.R. at 80 ("fiduciary status … may result from the exercise of any authority or control respecting management or disposition of [plan] assets"); *Liss v. Smith*, 278, 302 (S.D.N.Y. 1998).

Cases are split over whether the Bankruptcy Code definition of "fiduciary" and the ERISA definition of "fiduciary" are concentric or merely overlap.  The Ninth Circuit Court of Appeals in *In re Hemmeter*, 242 F.3d 1186, 1190 (9th Cir. 2001) and the Bankruptcy Appellate Panel for the First Circuit in *In re Fahey*, 482 B.R. 678 (B.A.P. 1st Cir. 2012) have each held that persons or entities that fall under ERISA's "functional" test for fiduciary status, also satisfy the fiduciary capacity requirement of § 523(a)(4); however, the Sixth Circuit Court of Appeals in *In re Bucci*, 493 F.3d 635, 641-42 (6th Cir. 2007), *cert. denied*, 553 U.S. 1093 (2008) and the Eighth Circuit Court of Appeals in *Hunter v. Philpott*, 373 F.3d 873, 875 (8th Cir. 2004), rejected the position that an ERISA fiduciary *per se* satisfies the fiduciary requirement under §

523(a)(4). The Second Circuit Court of Appeals has not yet ruled on this issue, although courts within the Second Circuit have held that an ERISA "fiduciary" *per se* satisfies the "fiduciary" standard under § 523(a)(4) of the Bankruptcy Code. *See, e.g.*, *Duncan*, 331 B.R. at 83-86; *In re Mayo*, Case No. 04-11106 (CAB), Adv. Pro. No. 04-1067 (CAB), 2007 Bankr. LEXIS 3197, at *28 (Bankr. D. Vt. Sept. 17, 2007).

Plaintiffs rely on *Fahey*, which held a debtor was a fiduciary with respect to unpaid contributions owed to multiple employee benefit plans. *Fahey*, 482 B.R. at 696. The B.A.P. there stated that, because the principal, Fahey, "assumed unfettered control over the unpaid contributions (which constitute plan assets), … and functioned as the only entity with control of deciding whether and when to pay [the entity's] contributions to the Funds … independent of his status as an ERISA statutory fiduciary, Fahey acted in a fiduciary capacity with respect to the Funds within the meaning of § 523(a)(4)." Judge Kornreich (now retired) dissented. Although he acknowledged that Fahey had exercised authority and control over the pension funds' assets and was responsible for fulfilling contractual obligations to the employee benefit funds, Judge Kornreich reasoned that an individual debtor should not have trust fund duties imposed on him at common law that do not exist under the Internal Revenue Code and may conflict with his duties to creditors under state law. Judge Kornreich stated that holding a debtor to be a fiduciary with respect to unpaid contributions "ignores the fiduciary duties he may have had to…creditors under Massachusetts law," and aptly stated:

> Under this rule, self-dealing by the director of an insolvent corporation could be a breach of a fiduciary duty to general creditors. The majority decision places the responsible officer of an insolvent corporation in jeopardy of violating a state law fiduciary duty if he or she chooses to distribute corporate assets to employee benefit funds in an effort to avoid a judgment under § 523(a)(4). Ironically, such a distribution could give rise to a sustainable, nondischargeable claim under § 523(a)(4) for breach of a state law duty. Unlike the Internal Revenue Code, which contains an express provision imposing breach of trust liability upon an individual

14

> who fails to pay withholding taxes, see 26 U.S.C. § 6672, ERISA contains no
> express provision imposing breach of trust liability upon an individual who fails to
> make corporate employee benefit contributions. We should not invent trust fund
> liability where none exists to punish a bad actor when doing so could press an
> honest debtor into violating a long established fiduciary duty to all general
> creditors.

*Fahey*, 482 B.R. at 696.

This Court agrees with the *Fahey* dissent analysis from an ultimate liability perspective; however, particularly in light of *Bullock*, this Court views the ultimate issue here as not being whether Debtor was a fiduciary, but whether or not he committed a defalcation while acting in a fiduciary capacity (discussed *infra*).

Because ERISA is a federal law and fiduciary status and defalcation under the Bankruptcy Code are also determinations made under federal law, this Court finds no compelling reason to hold that an ERISA fiduciary is not a per se fiduciary for § 523(a)(4) purposes. Thus, this Court will follow the courts that have adopted the *per se* test – that is, an ERISA fiduciary is a fiduciary for § 523(a)(4) purposes.

The parties do not dispute that Debtor: (1) determined whether or not CSI made timely contributions to the Benefits Funds; (2) exercised authority, control and management over the disposition of assets of CSI and had decision making authority with respect to whether or not to pay the obligations of CSI; (3) had decision making authority with respect to whether or not to pay the obligations of CSI; and (4) decided which accounts payable were to be paid by CSI. As a result, Debtor meets the functional test under ERISA and is therefore a fiduciary for purposes of § 523(a)(4).

### D.  Defalcation While Acting in a Fiduciary Capacity

Based on the record before this Court, however, Debtor did not commit a defalcation while acting in his fiduciary capacity. In *Bullock*, the Supreme Court articulated a uniform

15

federal defalcation standard:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). *See id.*, § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'wilful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.*, § 2.02(2)(c), at 226 (emphasis added).

*Bullock,* 133 S. Ct. at 1759-1760. The *Bullock* standard is similar to that previously applied by the Second Circuit, which had defined defalcation as "conscious misbehavior or extreme recklessness." *In re Hyman*, 502 F.3d 61, 68-69 (2d Cir. 2007) ("standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable."); *see also Shao Ke v. Jianrong Wang*, Case No. 14-3824, 2015 WL 5805954, at *1 (2d Cir. Oct. 6, 2015) (defalcation under § 523(a)(4) requires a showing that the faithless fiduciary committed an "intentional wrong," which incorporates a standard of conscious misbehavior or extreme recklessness).

Thus, the question is whether Debtor made such use of CSI's collections as to constitute an intentional wrong or reckless conduct rising to the level of criminally wrong. As noted above, this Court is not faced with a fiduciary absconding with or misusing funds that had been contributed by CSI's employees to be paid on to the Benefit Funds, or funds which were deducted from the employees' paychecks to be paid on to the Benefit Funds. Here, the sole issue

is Debtor's alleged failure to cause CSI to make contributions to the Benefit Funds from CSI's own general assets.

Plaintiffs have essentially argued that every dollar collected or received by CSI were trust funds which were required to be paid on to the Benefit Funds for any unpaid contributions owing by CSI, including both contributions which were due and owing at the time CSI collected any money and contributions that were not yet due when CSI collected any money. Plaintiffs rely on the CBA language as follows:

> contributions are considered assets of the respective Funds and **title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer.**

(emphasis added).[13]

This Court disagrees. First, Plaintiffs have not cited to any section of ERISA which makes general corporate funds of CSI trust funds in any manner similar to funds that have been paid into an ERISA plan or which have been withheld from employee paychecks and earmarked for ERISA plan contributions. Second, Plaintiffs' arguments would essentially elevate the general unsecured right of the Benefits Funds over the rights of secured creditors who have liens against accounts receivables and the cash proceeds thereof. Alternatively, as Judge Kornreich feared in his *Fahey* dissent, Plaintiffs would put a control person such as Debtor, who was running a struggling company, in the hapless situation of either paying a secured creditor from its receivables and incurring fiduciary personal liability for unpaid contributions, or avoiding ERISA personal liability by misusing cash collateral, or alternatively, having to choose avoiding

---

[13] See Plaintiffs' Statement, ¶ 9; Article XII A., Sec. 19.B., and Article XII B., Sec. 24.B., of the CBA 2005-2009; Article XII A., Sec. 19.B., and Article XII B., Sec. 24.B., of the CBA 2009-2011; Article XII A., Sec. 19.B. Section 24.B. of the CBA 2011-2014, Exhibits E, F, and G of the Dubin Decl.; Plaintiffs' Summary Judgment Motion, pp. 8, 14-15; Plaintiffs' Opposition, p. 6.

personal liability over paying vendors necessary to the continued success of the company. Forcing control persons of insolvent entities to choose between pension fund obligations and their duties to general creditors opens a Pandora's Box cluttered with fiduciary duties. Thus, while Debtor was a fiduciary, he did not commit a defalcation under the *Bullock* standard.

Plaintiffs go to great lengths in their papers to paint a picture of Debtor using CSI's assets for his own personal use, such as by paying the mortgage on his home, and therefore, committing a defalcation; however, Plaintiffs admitted at the Hearing that CSI assets, in fact, had not been used to pay Defendant's personal expenses or his home mortgage. In fact, the picture here is of a Debtor trying to keep his struggling company afloat. Prior to the Termination, CSI paid at least $455,165.00 of the contributions owed under the 2010 Judgment, and Kern personally paid at least $150,000.00 of the contributions owed to the Pension Funds under the 2012 Judgment. While Plaintiffs bemoan the fact the during 2009 through 2011 Kern received approximately $450,000 of salary from CSI and Sharon Kern received approximately $150,000 of salary from CSI, they belittle the fact that, in order to keep CSI operating, the Kerns personally contributed $577,392.00 of their funds into CSI's operations from September 2010 through February 2012, the vast bulk of which were contributed prior to the Termination. Moreover, the Kerns paid direct obligations of CSI's totaling $45,446.49 during the end of 2011 and beginning of 2012; the bulk of these, too, were paid prior to the Termination. Thus, in the aggregate, during the last few years that CSI struggled, the Kerns personally contributed to the company at least as much as they took out in compensation.

Thus, the record before this Court does not demonstrate self-dealing by Debtor, nor bad faith, moral turpitude, or other immoral conduct. Further, Plaintiffs have fallen far short of demonstrating the intentional conduct that the fiduciary knows is improper, or reckless conduct

that criminal law often treats as equivalent to intentional conduct, as required under *Bullock*. Thus, no defalcation was committed by Debtor.

### III.    *Public Policy is Inapplicable*

This Court has conducted a "statutory, not a policy, analysis" and therefore, will not address the policy arguments asserted by the parties.  *See In re Zair*, 535 B.R. 15, 18 (Bankr. E.D.N.Y. 2015) (court explained that it was conducting a statutory, not policy, analysis).

<u>**CONCLUSION**</u>

This Court concludes that Plaintiffs have not established their entitlement to summary judgment, and Debtor has established his entitlement to summary judgment. As such, all claims in the Amended Complaint should be dismissed as a matter of law.  Debtor is also entitled to his costs under Rule 7054.

Counsel for Debtor is directed to submit a judgment in conformity herewith within **fourteen (14) days**, and Debtor may file a statement of costs within **fourteen (14) days**.



**Dated: December 10, 2015**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**